Good afternoon. Good afternoon, Your Honor. May it please the Court. Gene Barabio on behalf of Mr. Mota. I plan to focus on the reasonableness of both statutory maximum tenure prison term that my client got as well as a lifetime supervisory release term. And I guess I respectfully disagree with Judge Berzon's characterization that every case other than Henderson is a routine sentencing case because I think my client's case is not routine in that. What I mean is it doesn't really have a Kimbrough issue in it. Well, we have raised a Kimbrough-like argument but only in the case, sort of in the light of a case-specific 3553A type of analysis, and basically that even though the sentence that he got is actually a few months below what the calculated range was, it still does not show that it's a reasonable sentence because the guideline has significant flaws. And I am not planning to talk about those issues. I think those were covered. The only thing I wanted to add is that I can't quite understand the government's position that the guideline is still a valid measure of punishment when we have cited to the Court letters that the government has written to the Sentencing Commission suggesting reforms along similar lines that the criticism against this guideline has been. I see an inconsistency in those positions. And actually I'm looking forward to Mr. Vandervelde explaining that to me because I don't understand it. And that's all I wanted to say about that. Counsel, let's get down to your case. Tell me what your client did while he was out awaiting sentencing. He violated his terms of parole. What did he do? He pled to the fact that he had additional child pornography, 58 images, while on pre-trial release. That's all we know. This is all he pled to. And that is all that's in the pre-sentence report. I know the government has argued on appeal that he went out and sought additional child pornography. And I don't think the record bears this out at all. We don't know how he, the only thing that we do know. Well, we do have to accept the fact that he pled to and admitted that after he was arrested and he's on supervised release, he continued, he did what he was told not to do. Well, he pled to the fact that he knowingly had this on his computer. Whether he went out and got it versus he didn't tell the officers I had this additional computer. What were the elements of what he pled to? Well, he pled to the fact that he knowingly possessed, while on pre-trial release, he knowingly possessed 58 additional child pornography images. Right, and he wasn't supposed to possess any. Right, right. So that's what, okay, so we know that. Obviously, now this fact is established. He pled to the fact that he had child pornography while on pre-trial release, and he was obviously not supposed to do that. So that's obviously, I think we've conceded, that's something that does aggravate his conduct. But the question here is, does it aggravate it all the way up to the 10-year maximum? Because if you take this factor out, I would argue to the Court that this is a case where substantial leniency should have been shown. Which factor, Adam? If you take out, if you were to take out the fact that he violated pre-trial release, other than that factor, I would have argued to the Court that not as a matter of disagreement, but as a matter of law, this is a case that should have gotten a substantially mitigated sentence. Now, the fact that he does have this on pre-trial release does give the Court an opportunity to treat it, let's say, as more of a run-off-the-mill case. But my position is, as a matter of law, this factor does not take it all the way up to the sentencing maximum of 10 years. And other than that, and I guess, other than that, this is just a routine child pornography case. Possession of child pornography is still a serious crime. Nobody is disputing that. The only question is, does he get the maximum sentence? And if we go to the background and characteristics of Mr. Mota, I think he presents a substantial case for leniency. He's a first-time offender. Up until he was 28 years old, he led a law-abiding, I would say, commendable life. He finished high school, took college classes, had a job since he was 19, all the way up until the date of his arrest. He did volunteer work. He coached Little League Baseball. There is not a shred of evidence that he did anything inappropriate when he engaged in those activities. So I think all those factors were factors in mitigation. Now, I want to address a district court statement that, for example, volunteer work or letters of support could cut both ways. You know, either it's philanthropy or opportunity. And our position is that unless there is some evidence that he's doing something inappropriate when he's doing those things, the only way to treat that evidence is as evidence in mitigation. Because anything else would be sheer speculation. Well, the court has to evaluate him for his dangerousness, right? Oh, yes, Your Honor. And so really what ‑‑ I'm not saying that there aren't other cases where people violate their pretrial, their release conditions. I haven't particularly had one, but they're not in every case. Let's just put it that way. So that right there, unfortunately, you know, that does ‑‑ that puts you in a different category than someone that doesn't have that situation. And the court, you know, why would a court not be able to look at, you know, your access to minors that you're, you know, working for Girls and Boys Club or, you know, that you're involved in Little League? You know, why are these ‑‑ Because I think there is a great danger of crossing over from looking at evidence to having a visceral reaction to this offense. It's not a pretty offense. I mean, counsel in the previous case read some of the description of the pictures that appear in these cases. No, it's not. But the thing is that in dangerousness, you obviously look to, you know, if the fact that you know you're already under a microscope, you know that you're in trouble, and then, you know, it concerns the judge that the behavior is so compulsive, you know, that it's so uncontrolled that any access to children or the fact that you already know that you're facing this and then you're still, you know, you can't even for that period of time stop, it makes a court less likely to feel that there are reasonable ways to restrain this person from reoffending. Well, I think in order for this type of concern to have arisen, you would have needed to have known a lot more about how this came about, just know that the fact that he possessed it. I mean, again, I'm not disputing that he possessed it when he was not supposed to. And it is a factor that would allow the court to look at him differently than if this hasn't happened. But for all we know, for example, in a document, there is a pretrial services letter that the government has submitted. Now, we have filed a motion to strike. I don't believe it's part of the record. But let's assume for a moment that it is. All that letter says is that the file was accessed on certain dates. We don't know why he was accessing them. For all we know, he could have been trying to delete them. And obviously, those are the type of facts that... Did you ask for a hearing on this? I'm sorry? Did you ask for a hearing on this? I was not trial counseling. Well, did anybody ask for a hearing on it? Unfortunately, no. So, isn't that the problem? I mean, if there was something they wanted to say, I presume they could have said it. And they also could have said it in an argument. Your Honor, it's true, but it is the government's burden to prove facts relevant to sentencing by prequirements as evidence. If you're going to say that he's dangerous based on the fact that he violated pretrial lease, you have to have some evidence that he's dangerous. He has never done anything with actual children. There is not a shred of evidence of anybody saying that he did anything inappropriate, that he behaved with children inappropriately. The issue really with regard to this behavior was whether he was out of control with regard to the behavior such that even when he was directed not to do it, he couldn't do it. If there was an explanation such as the one that you're suggesting, he could have made that. Otherwise, it's a fair inference, no? Well, I think that is more expensive evidence that the record will allow. He obviously did some things that he wasn't supposed to, but there was a spectrum within that characterization that, you know, in some instances, you could say that he's really out of control. In other instances, that it could have been that he, you know, he just didn't tell the officer he had an additional computer. He accessed these files that he would have tried to delete them. And if you're going to max somebody out, I think you have to have at least some facts showing that he's actually compulsive. All right. Well, so what's your best case that would help you here? I'm sorry? What's your best case that would be similar to yours factually that said the judge was wrong? Well, actually, the best case just really on the facts is the DS case that we cited in the 28J letter. Because I reviewed it in preparation for oral argument. I reviewed it, and I was struck by how similar the facts were. You know, and the only difference of this is the pretrial violation release. That defendant got six months and 12 years supervised release. My client got 10 years and a lifetime supervised release. And that's a huge disparity. Okay. Thank you very much. May it please the Court. Eric Vanderbilt, the United States. The defendant, through his own words and actions, demonstrated conclusively to the district court that he was compulsive, that if given the chance, he would keep committing new child pornography offenses. He told the FBI that in January 2007 when he was confronted. He said, I have tried to stop myself from obtaining child pornography, but instead I can't. I've been unable to. I engage in a cycle of obtaining, deleting, and obtaining more child pornography. After he was confronted in January 2007, he continued to have a minor child live with him at his residence. That's in the pretrial services violation letter at three. And then even with the full weight of the criminal justice system upon him, after indictment, after arrest, after being hauled into court and having his initial appearance and being specifically ordered not to possess child pornography and not to have direct contact with children, he was found with a laptop with additional child pornography he had just recently viewed. And he was found in possession of photographs of and correspondence to real children that he had struck up relations with, including a child in juvenile hall that he was trying to adopt. And so although defense counsel argues that he is an average offender, it's the government's view that he is significantly beyond an average offender in terms of culpability. And so the sentence imposed was not substantially unusable. The district court specifically rely on the his contact while I'm supervised from these in setting the sentence. I don't believe the district court mentioned it, but government counsel mentioned it both in its papers, both in its initial sentencing position, in its reply sentencing position, and orally at sentencing. Government counsel specifically directed the court to that letter and to the contents of the letter regarding that violation and what, in the government's counsel view, made defendants' access to minors and his consistent. Why doesn't this sentence suffer? I mean, why isn't it so succinct, the explanation, given the somewhat unusual circumstances that there is a procedural problem? Well, it's clear that the district court could have said more. But in defense counsel's view. He said basically nothing. Well, the district court decided to identify the 3553A factors that were applicable in this case. He read and considered the sentencing papers, heard oral argument. He indicated that he read the sentencing letters submitted in support of the defendant. He considered the policy statements and said he considered the policy statements of the Sentencing Commission. He considered the parsimony principle. Suppose there hadn't been this supervised release conduct. Do you think this would be a reasonable sentence? Do you think it would be so unreasonable that we ought to have rejected it? I can't speak to the facts that weren't this case. The facts of this case is that there was a supervised release violation. I understand. But I'm asking if there weren't one. If there were one. Were not one. If there were not a supervised release violation, it would be a harder case to make that a guideline or an above-guideline sentence were appropriate. Well, why isn't it, therefore, worth knowing whether the district court even took it into account? Because he doesn't say he did. But the district court is assumed to understand the arguments that are presented to it. Government counsel specifically said, Your Honor, I'm directing your attention to the pretrial violation letter submitted on December 17th. And in that letter, defendant is, you know, violated the terms of his pretrial release and obtained additional child pornography and attempted to contact minors. And, in fact, government counsel referenced the fact that defendant specifically was struggling emotionally to not have contact with a number of minors who he referred to as his, quote, unquote, God sons. And so it's not unreasonable for the district court to take in all the facts before it and conclude that a guideline sentence at the end of the day, yes, it happens to be the statutory maximum, but a guideline sentence is appropriate in this case. And I would point out that on appeal, as Your Honor noted, there was no Kimbrough argument with respect to 2G2.2, and it's not unreasonable for the district court not to have addressed arguments not raised before it at the trial court level or to not articulate all the reasons why it does agree with the 2G2.2 on the facts of this case. And, furthermore, no case that the government is aware of have ever said that additional explanation is necessary for a sentence that happens to be the statutory maximum. And, in fact, Rita and Cardi and this circuit's other cases have all said that a guideline sentence ordinarily requires little explanation and that the court need not take off each 3553 fact. Unless, Your Honor, you have other questions. Thank you very much. Thank you. I think you've finished your time, but I'm not sure. We'll give you a minute. Go ahead. You're over. Nine seconds. Okay. You're over nine, I think. You're going up. I can't quite tell that because there's the right button isn't going, but go ahead. Just very briefly, on the procedural aspect, counsel said that the court ticked off the factors he considered. The court ticked off every 3553. He didn't give much. He basically gave no explanation. Okay. And neither does the PSR. If you look at the PSR, same thing. So at a minimum, I think it should go back. Thank you very much. Thank you. Thank you, counsel. The case of United States v. Moda is submitted. We will go on to United States v. Sixth.
judges: Fletcher B. , Berzon, Callahan